ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2004 JUN 14 PM 4: 24

CLERK OF COURT

CIVIL ACTION NO. 4-04CV-208-A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND OTHER
REINSURERS SUBSCRIBING TO REINSURANCE AGREEMENTS
F96/2992/00 AND F97/2992/00
Plaintiffs

v.

WARRANTECH CORPORATION, WARRANTECH CONSUMER PRODUCTS
SERVICES, INC., WARRANTECH HELP DESK, INC. AND JOEL SAN
Defendants

REINSURERS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS' PUTATIVE AFFIRMATIVE DEFENSES
OF RES JUDICATA AND COLLATERAL ESTOPPEL AND ON WARRANTECH
CORPORATION'S PUTATIVE "COUNTERCLAIMS"

Walter A. Herring
 Texas State Bar No. 09535300
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 855-8000
Telecopier: (214) 855-8200

Attorney-in-Charge for Plaintiffs
Certain Underwriters at Lloyd's London and Other
Reinsurers Subscribing to Reinsurance Agreements
F96/2992/00 and F97/2992/00

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... iv

I.  PRELIMINARY STATEMENT, GROUNDS AND SUMMARY OF THE
    ARGUMENT ...................................................................................................... 1

    A.  Parties, Background and Procedural Posture ............................................. 1

    B.  Why Defendants' Res Judicata and Collateral Estoppel Defenses Should
        Be Rejected ................................................................................................. 2

    C.  Why Warrantech Corporation's Putative Counterclaims Should Be
        Rejected ...................................................................................................... 3

    D.  The Court Specifically Contemplated this Motion for Partial Summary
        Judgment ..................................................................................................... 3

II. ARGUMENT ...................................................................................................... 4

    A.  The Affirmative Defenses at Issue ............................................................. 4

    B.  The Arbitration Between Reinsurers and Houston General Did Not
        Involve the Same (or Even Similar) Claims and Issues as Those
        Presented in this Litigation.  The Issue to be Decided in the Reinsurance
        Arbitration was Simply Who Was Responsible for the Bill ....................... 5

    C.  Defendants Have No Rights Under the Reinsurance Award and Are Not
        Privies of Houston General – Who Actually Threatened Warrantech with
        Suit if it Got Stuck With the Bill on Warrantech's Claims ....................... 8

    D.  The Huge Gulf Between the Issues in the Reinsurance Arbitration and
        This Case Against Defendants for Their Tortious Conduct Squarely
        Precludes any Application of Collateral Estoppel ..................................... 11

    E.  Warrantech Corporation's Counterclaims Are Completely Bogus And
        Should Be Rejected ..................................................................................... 15

        1.  Background .................................................................................. 15

        2.  Warrantech Corporation's Counterclaims ...................................... 15

        3.  Why The Counterclaims Should Be Rejected ................................. 15

**TABLE OF CONTENTS**
(continued)

4. The Law Is Clear That Because Warrantech Corporation Has Never Been In Privity With Reinsurers It Cannot Bring Any Direct Claims Against Them. Texas Case And Statutory Law Clearly Forbids Such Claims ........................................................... 16

5. Warrantech Corporation Simply Has No Legal Basis Or Evidence To Recover For "Fraud" And, As With All Its Other Claims, Warrantech Corporation Essentially Pleads Itself Out Of Court .... 17

6. Warrantech Corporation Has No Basis Or Evidence To Assert An Article 21.21 Claim Against Reinsurers With Whom It Has No Relationship Whatsoever ................................................................. 19

7. Warrantech Corporation's "Bad Faith" Claims Are Facially Unsustainable – Because There Is No Insured/Insurer Relationship Between It And Reinsurers, The Insurance Duty of Good Faith Simply Cannot Exist ................................................... 20

8. The Two-Year Statute Of Limitations Bars The Insurance Code and Bad Faith Counterclaims ............................................................ 21

9. Warrantech Corporation's Complaints About The Conduct Of Discovery And The Reinsurance Arbitration Are Facially Barred – Parties And Their Counsel Are Afforded Broad Discretion In Advocating Claims And Defenses ................................................. 22

III. CONCLUSION AND PRAYER ............................................................ 23

CERTIFICATE OF SERVICE ........................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Blonder-Tongue Laboratories v. Univ. of Ill. Found.,* ........................................................ 4, 5
    402 U.S. 313 (1971)

*Celotex Corp. v. Catrett,* ............................................................................................ 4
    477 U.S. 317 (1986)

*Celtic Life Ins. Co. v. Coats,* ..................................................................................... 21
    885 S.W.2d 96 (Tex. 1994)

*Chapman Children's Trust v. Porter & Hedges,* ............................................................. 23
    32 S.W.3d 429 (Tex. App.–Houston [14th Dist.] 2000, pet. denied)

*Eagle Properties, Ltd. v. Scharbauer,* .......................................................................... 14
    807 S.W.2d 714 (Tex. 1990)

*Emich Motors Corp. v. General Motors Corp.,* ............................................................... 12
    340 U.S. 558 (1951)

*Harkey v. Texas Employers' Ins. Ass'n,* ....................................................................... 13
    208 S.W.2d 919 (Tex. 1948)

*IBP, Inc. v. Klumpe,* ................................................................................................. 23
    101 S.W.3d 461 (Tex. App.–Amarillo 2001, pet. denied)

*Insurance Co. of N. Am. v. Morris,* ............................................................................. 17
    981 S.W.2d 667 (Tex. 1998)

*Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,* ..................................................... 12, 13
    962 S.W.2d 507 (Tex. 1998)

*Keightley v. Republic Ins. Co.,* .................................................................................. 20
    946 S.W.2d 124 (Tex. App.–Austin 1997, no writ)

*Kremer v. Chemical Const. Corp.,* ............................................................................... 5
    456 U.S. 461 (U.S. 1982)

*Kruegel v. Murphy,* .................................................................................................. 23
    126 S.W. 343 (Tex. Civ. App.–Dallas 1910, writ ref'd)

*Latham v. Wells Fargo Bank, N.A.,* .......................................................................... 5, 8
    896 F.2d 979 (5th Cir. 1990)

## TABLE OF AUTHORITIES
(continued)

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* ..................................................... 4
475 U.S. 574 (1986)

*Murray v. San Jacinto Agency, Inc.,* ................................................................................ 21
800 S.W.2d 826 (Tex. 1990)

*Natividad v. Alexsis, Inc.,* ............................................................................................ 20
875 S.W.2d 695 (Tex. 1998)

*Renfroe v. Jones & Assocs.,* .......................................................................................... 22
947 S.W.2d 285 (Tex. App.–Fort Worth 1997, writ denied)

*State & County Mutual Fire Ins. Co. v. Miller,* ................................................................ 16
52 S.W.3d 693 (Tex. 2001)

*Sysco Food Servs., Inc. v. Trapnell,* ............................................................................... 11
890 S.W.2d 796 (Tex. 1994)

*Texas Employers Ins. Ass'n v. Jackson,* ........................................................................... 5
862 F.2d 491 (5th Cir. 1988)

*Universal American Barge Corp. v. J-Chem, Inc.,* ........................................................... 11, 12
946 F.2d 1131 (5th Cir. 1991)

*Van Dyke v. Boswell, O'Toole, Davis & Pickering,* .......................................................... 13
697 S.W.2d 381 (Tex. 1985)

*Washington v. Armstrong World Indus., Inc.,* ................................................................... 4
839 F.2d 1121 (5th Cir. 1988)

## RULES & STATUTES

9 U.S.C. §205 .............................................................................................................. 2

Fed. R. Civ. P. 56(c) .................................................................................................... 4

Tex. Ins. Code art. 5.75-1(g) .......................................................................................... 16, 19

Tex. Ins. Code art. 21.21 .............................................................................................. 2, 3, 15, 18, 19, 20, 21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND OTHER REINSURERS SUBSCRIBING TO REINSURANCE AGREEMENTS F96/2992/00 AND F97/2992/00<br><br>     Plaintiffs,<br><br>v.<br><br>WARRANTECH CORPORATION, WARRANTECH CONSUMER PRODUCTS SERVICES, INC., WARRANTECH HELP DESK, INC. AND JOEL SAN ANTONIO<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4-04CV-208-A |

**REINSURERS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' PUTATIVE AFFIRMATIVE DEFENSES OF RES JUDICATA AND COLLATERAL ESTOPPEL AND ON WARRANTECH CORPORATIONS PUTATIVE "COUNTERCLAIMS"**

**I. PRELIMINARY STATEMENT, GROUNDS AND SUMMARY OF THE ARGUMENT**

**A. Parties, Background and Procedural Posture:** Plaintiffs Certain Underwriters at Lloyd's, London and other Reinsurers Subscribing to Reinsurance Agreements F96/2992/00 and F97/2992/00 (collectively, "Plaintiffs" or "Reinsurers") submit this Brief In Support of their Motion for Partial Summary Judgment pursuant to Local Rules 7.1, 7.2 and 56.5. Plaintiffs sued Defendants in Texas state court on purely state causes of action for Defendants' misrepresentations and fraud in obtaining reimbursement on bogus and fabricated consumer warranty and repair claims on computers and related electronics. Defendant Warrantech Corporation ("Warrantech Corporation") filed an Original Counterclaim in the Texas state court

action for fraud, Texas Insurance Code Article 21.21 violations (unfair and deceptive insurance practices) and for insurance bad faith — Warrantech Corporation asserted these counterclaims notwithstanding the fact that, in the very same pleading, it squarely admitted that, "Warrantech did not have any contractual relationship with Reinsurers." After individual Defendant Joel San Antonio was named, Defendants removed this case purportedly on the basis of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (specifically, 9 U.S.C. § 205) alleging that Plaintiffs' claims against Defendants were somehow barred by the previously-completed private reinsurance arbitration between Plaintiffs and Houston General Insurance (the "Reinsurance Arbitration").

**B. Why Defendants' Res Judicata and Collateral Estoppel Defenses Should Be Rejected:** Defendants are insureds of Houston General only; they have no contractual relationship with Reinsurers. By written reinsurance agreements, Reinsurers reinsured the risks Houston General undertook through the policies it issued Defendants. However, Defendants have never been parties to the underlying reinsurance agreements, the Reinsurance Arbitration proceedings or the resulting award and confirmation proceedings. Further, Defendants' tortious and fraudulent acts in making false insurance claims were never adjudicated in the Reinsurance Arbitration, nor could they have been — there has never existed any contract or agreement, much less an arbitration agreement, between Plaintiffs and Defendants. The Panel's Award in no way mentions Defendants or Reinsurers' claims against them. This is hardly surprising — Reinsurers' claims against Defendants did not become fully ripe until the Panel ordered them to pay Houston General the lion's share of the money it claimed under the reinsurance agreements. At bottom, Plaintiffs' state court claims against Defendants are wholly separate from and independent of the Reinsurance Arbitration. This is underscored by the fact that Houston

General itself threatened to sue Warrantech after the Reinsurance Arbitration if it got stuck with the bill on Warrantech's claims. And throughout the Reinsurance Arbitration, Houston General made crystal clear that it was in no way responsible for, or acting on behalf of, Warrantech. In sum, the claims and issues involved in Plaintiffs' lawsuit against Defendants were never part of, or determined by, the Reinsurance Arbitration with Houston General. Defendants' res judicata and collateral estoppel defenses should be rejected.

**C.** **Why Warrantech Corporation's Putative Counterclaims Should Be Rejected:** In a terse five (5) paragraphs, Warrantech Corporation asserts bizarre and baseless "counterclaims" for fraud, Article 21.21 violations and insurance bad faith — notwithstanding the fact that **Warrantech Corporation freely admits it has never had any contract or insured/insurer relationship with Reinsurers**. At bottom, all the counterclaims are predicated on Reinsurers' legitimate assertion of their Treaty rights with Houston General (including the right to arbitrate) and on Reinsurers' discovery efforts and advocacy of their positions before the Reinsurance Arbitration Panel. But none of these things can form the basis for any legally-cognizable theory of recovery. As a matter of law, Warrantech Corporation's factual allegations simply cannot support any element of its counterclaims. Warrantech Corporation's own pleadings demonstrate that there exists no genuine issue of material fact and that Reinsurers are entitled to summary judgment. Further, Warrantech Corporation's judicial admissions and the summary judgment evidence negate each of the requisite elements of its claims. Finally, Warrantech Corporation can adduce no evidence on any required element to raise a genuine issue of material fact.

**D.** **The Court Specifically Contemplated this Motion for Partial Summary Judgment:** In the Court's May 13, 2004 Order denying Plaintiffs' Motion to Remand, the Court

stated that it would "consider whether the action should be remanded to the state court" in the circumstance where the Court "makes a summary ruling that the arbitration award does not provide a defense to any of plaintiffs' claims." Through this Motion, Plaintiffs respectfully request, *inter alia*, that the Court make that summary adjudication.

Summary judgment should be granted against Defendants' preclusion defenses and Warrantech Corporation's counterclaims both because the evidence negates all the essential elements of those defenses and claims and because Defendants simply do not have sufficient evidence to raise a genuine issue of material fact on each of the requisite elements of those defenses and claims. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Washington v. Armstrong World Indus., Inc.* 839 F.2d 1121, 1122 (5th Cir. 1988).[1]

## II.  ARGUMENT

**A.  The Affirmative Defenses at Issue:**  Defendants have asserted the preclusion defenses of res judicata and collateral estoppel.  It is well established that the doctrine of res judicata — claim preclusion — may bar a federal action where an earlier action (1) involved the same claim as the present suit, (2) reached a final judgment on the merits, and (3) involved the

---

[1]  In support of their Motion, Plaintiffs respectfully request that the Court take judicial notice of the contents of the official file in this case.  Plaintiffs also submit herewith their separate Appendix of Summary Judgment Evidence — including true and correct copies of items Defendants have previously attached to their pleadings and submitted as evidence and other true and correct copies of materials from the Court's official file in this case — Plaintiffs incorporate same to the extent and for the purposes noted.  Plaintiffs in no way admit any of the allegations in Defendants' (or any other person's or entity's) filings, pleadings, papers, exhibits or evidence.

same parties or their privies. *Blonder-Tongue Laboratories v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971). Similarly, the doctrine of collateral estoppel — issue preclusion — may bar relitigation of discrete issues if they were necessarily and finally adjudicated in an earlier action. *Texas Employers Ins. Ass'n v. Jackson*, 862 F.2d 491, 500 (5th Cir. 1988). A non-party is a privy for preclusive effect purposes if (1) he succeeded to the party's interest in property, (2) he controlled the prior litigation, or (3) a party to the prior proceeding actually and adequately represented the non-party's interests in the litigation. *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990). Courts must be exacting when analyzing preclusion defenses because of the obvious Constitutional implications — no party should be improperly deprived of the right to fully and fairly litigate its claims before an impartial tribunal. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480-82 (U.S. 1982). In the present case, Defendants have no evidence to raise a genuine issue of material fact on any element of their preclusion defenses and the undisputed summary judgment evidence affirmatively negates all the required elements of those defenses.

**B. The Arbitration Between Reinsurers and Houston General Did <u>Not</u> Involve the Same (or Even Similar) Claims and Issues as Those Presented in this Litigation. The Issue to be Decided in the Reinsurance Arbitration was Simply Who Was Responsible for the Bill.** As the Reinsurance Arbitration Award and confirmation make clear, the only "claim" at issue in those proceedings was Houston General's claim that Reinsurers owed it payments under the parties' private reinsurance agreements. App. at 7-8 (Item 1 - Final Award pp. 1-2); App. at 10 (Item 2 - Confirmation Order); and App. at 14-17 (Item 3 - Memorandum Order). Houston General's conduct — not any Warrantech entity and/or San Antonio's — was the necessary issue for determination in the Reinsurance Arbitration. Houston General argued that pursuant to the

Follow the Fortunes Doctrine, Reinsurers were required to reimburse Houston General for payments Houston General made *even if those payments were improper* and *even if the money paid to Warrantech was not owed* under the policy of insurance which Houston General provided. Houston General argued that under Follow the Fortunes principles, only a showing by Reinsurers of "bad faith" on the part of Houston General (separate and distinct from any showing of fraud on the part of Warrantech) could defeat application of this well-established reinsurance doctrine. Houston General maintained that "the touchstone of any inquiry here must be whether Houston General acted in good faith and conducted a reasonable investigation" (App. at 19, 26 (Item 4 - Houston General Post-Hearing Response Brief p. 4)), and whether Reinsurers carried "the burden of proving that Houston General did not act in good faith after conducting a reasonable investigation [of Warrantech's claims handling]." App. at 24 (*Id.* p. 2).[2]

---

[2] In its arbitration briefing, Houston General wrote:

> A.    The Reinsurers Are Obligated To Follow Houston General's
>        <u>Fortunes On The Treaties.</u>
>
> The follow-the-fortunes doctrine has long been inherent in the reinsurance relationship and is implied in every reinsurance agreement. <u>See e.g., Aetna Casualty & Sur. Co. v. Home Ins. Co.</u>, 882 F. Supp. 1328, 1350 (S.D.N.Y. 1995) ("it is customary within the reinsurance industry for reinsurers to follow the claim settlement decision of the ceding company even in the absence of an express loss settlements clause"); <u>International Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates at Lloyd's of London</u>, 868 F. Supp. 917, 920 (S.D. Ohio 1994) ("It is commonly understood that reinsurers must 'follow the fortunes' of their insured. This fact may be formally expressed in an agreement of reinsurance. Even if it is not, the 'Follow the Fortunes' doctrine applie[s] to all reinsurance contracts.").
>
> App. at 90, 120 (Item 5 - Houston General's Post-Hearing Brief page 28).

The centerpiece of Houston General's arbitration case was that, under the Follow the Fortunes Doctrine, Reinsurers had to pay so long as Houston General had not engaged in bad faith. Houston General argued the conduct of third parties — including Defendants — was simply irrelevant. Houston General argued from the outset that it was entitled to an award regardless of whether Warrantech improperly handled claims.

> **"Even if Warrantech had paid a large number of claims improperly** – and there are no credible facts demonstrating this to be true – **the London Reinsurers are still not entitled to default on their obligations under the Treaties.** This is, after all, MGA business, involving an MGA with whom the London Reinsurers had a far closer relationship than did Houston General. It is no secret that such business can turn out to be unprofitable. When it does, there is absolutely no precedent to suggest that a reinsurer can enjoy a windfall by shifting the losses to the fronting company. Rather, the industry custom and practice requires reinsurers to follow a cedent's fortunes.
>
> App. at 197, 208 (Item 6 - Preliminary Statement of Houston General p. 11).

Houston General also noted that they *and* Reinsurers could pursue claims against Warrantech later if it was determined that claims had been improperly administered:

> What is more, it is not as if the London Reinsurers have no recourse if it turns out that Warrantech and/or IBI were improperly performing their jobs. **It is quite clear, both from the language of the Treaties and the course of dealing among the parties, that in a situation like this it was contemplated that both Houston General and the London Reinsurers could claim against Warrantech or IBI for the amount of any such loss.** What was never contemplated, and is nowhere suggested by the language of the Treaties, is that Houston General would bear the loss alone. (emphasis added).
>
> App. at 209 (*Id.* At p. 12).

In its submissions to the Panel, Houston General also argued that Defendants' misconduct was simply "irrelevant" in light of the Follow the Fortunes Doctrine:

> There is, however, another and more fundamental reason why the Reinsurers should be ordered to pay what they owe:  **all of the arguments about "forced matching," Warrantech's claims handling, and the two claims reviews are simply irrelevant to the contractual obligation of the Reinsurers to Houston General**.    The hearing record unmistakably shows that the parties never contemplated that Houston General would serve as guarantor of Warrantech's performance.

App. at 179 (Item 5 - Houston General's Post-Hearing Brief p. 87).

In light of the actual decisional issues before the Panel, it is only natural that the Reinsurance Arbitration Award and confirmation contain absolutely no findings – actual or implied – that bear on, much less bar, any of Reinsurers' claims against Defendants in this lawsuit. App. at 7-10 (Item Nos. 1 and 2 - Award and Confirmation Order).

**C. Defendants Have No Rights Under the Reinsurance Award and Are <u>Not</u> Privies of Houston General — Who Actually Threatened Warrantech With Suit if it Got Stuck With the Bill on Warrantech's Claims:**  Under well-established law, Defendants could only be privies of Houston General by (1) succeeding to Houston General's interests, (2) by having controlled the prior litigation, or (3)  by having had their interests actually and adequately represented in the prior adjudicatory proceeding. *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990).  Defendants can adduce absolutely no evidence on any of these alternatives.  And, under the undisputed evidentiary record, it cannot seriously be contended that Defendants were aligned with, much less privies of, Houston General or that Houston General represented Defendants' interests.

Warrantech has itself testified that Houston General threatened to sue them if it lost the Reinsurance Arbitration and got stuck with the bill on Warrantech's claims.  Warrantech's Vice-President of Insurance, Jeanine Folz, has specifically testified that Houston General made a direct threat to sue Warrantech if Houston General was unsuccessful in the Reinsurance Arbitration:

> Q:     Do you recall at that meeting saying anything about what Wayne Sparks had threatened, as respects Warrantech, if Houston General did not have a successful result in this arbitration?
>
> A:     Yes.
>
> Q:     What did Mr. Sparks – what did you say in that meeting about that?
>
> A:     Mr. Sparks basically said that the money had to come from somewhere, so if Houston General was unsuccessful in winning this arbitration, they would look to us to pay the claims.
>
> **Q:     Did Mr. Sparks threaten litigation against Warrantech in that event?**
>
> **A:     Not directly, no, but he said – he said:  Hey, you know what?  If we lose, we're coming after you.**
>
> **Q:     Okay.  Did you view that as a threat?**
>
> **A:     I did.**
>
> App. at 213, 214-15 (Item 7 - Jeanine Folz's Depo. 9:19-10:11) (emphasis added).

The parties to the Reinsurance Arbitration – and the Panel itself – recognized that a subsequent lawsuit by Reinsurers against Warrantech was in the offing.  The transcript of the October 31, 2000, organizational meeting in the Reinsurance Arbitration shows that Warrantech also understood the likelihood of a lawsuit.   At that meeting, counsel for Houston General (Mr. Spector) advised that he had been in contact with Warrantech about discovery requests which the Reinsurers would be making in the Arbitration.  Houston General's lawyer advised the Panel:

> Obviously, Warrantech is concerned.  They understand the potential for litigation, especially with the London Reinsurers.  They understand that the London Reinsurers are claiming that they have acted fraudulently.  There is a lot of tension there.

> App. at 218, 219 (Item 8 - Arbitration Record p. 82:14-21)

Well after the Panel started hearing evidence in the Reinsurance Arbitration, it became known to Plaintiffs that Warrantech had flouted a discovery subpoena and had concealed and then destroyed its WISE software — an unlawful software program Warrantech used to improperly fabricate complete warranty records from incomplete and disqualified files. Tellingly, Houston General saw no need, or basis, upon which to try to defend Warrantech's wrongful destruction of the WISE software.  After all, Warrantech was a separate entity from Houston General and the latter in no way sought to represent it.  Houston General argued to the Panel that Reinsurers' "spoliation" argument should not give rise to any negative inference against Houston General;  its lawyers stated simply:

> Houston General had nothing to do with the nonretention of the WISE system software and cannot be held responsible for it.

> App. at 40 (Item 4 - Post-Hearing Response Brief of Houston General p. 18).

In light of this clear distancing, it is not surprising that Houston General ultimately "offered up" Warrantech as a potentially responsible party for any fraudulently-obtained insurance payments and for the unfolding wrongful destruction of evidence.  Perhaps the best evidence that the parties to the Reinsurance Arbitration understood that the arbitration would **not** foreclose future litigation against Warrantech can be seen in the following excerpt from closing arguments wherein Houston General's lawyer specifically acknowledged the bases for a subsequent fraud suit against Warrantech;  (Mr. Spector again speaking for Houston General):

MR. SPECTOR [Houston General's Counsel]:  If – and I underscore "if" – what [Counsel for Reinsurers] said in his closing argument were true, **if Warrantech really had engaged in this massive fraudulent conspiracy and if all their witnesses including Mr. Lang were testifying falsely and perjured themselves before this panel, if those things were true, yes, they would have a cause of action for fraud today and they had one in June of 2000.**  [App. at 221-22 (Item 9 Closing Arguments August 16, 2002, pp. 9-10) (emphasis added).[3]]

The evidentiary record is simply undisputed that, irrespective of who won the Reinsurance Arbitration, the parties and Panel contemplated a subsequent lawsuit against Warrantech for, *inter alia*, losses attributable to its bogus reimbursement claims.  Under these circumstances, it cannot seriously be contended that Defendants were somehow privies of Houston General.

**D.  The Huge Gulf Between the Issues in the Reinsurance Arbitration and This Case Against Defendants for Their Tortious Conduct Squarely Precludes any Application of Collateral Estoppel:**  Close scrutiny of what was at issue and actually determined in a prior proceeding permeates every element necessary to establish the preclusive effects, if any, from that proceeding.  *See, e.g. Sysco Food Servs, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (The Texas Supreme Court in *Sysco Food Servs., Inc. v. Trapnell* stated in clear terms that, "[a] party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action;  (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in

---

[3]      While Reinsurers did adduce evidence of Warrantech's fraudulent schemes to make bogus claims, mislead the Panel and destroy properly-subpoenaed evidence, the Panel was never called upon — nor did it have authority — to determine the liability of Defendants for their wrongdoing. And, in any event, under the Follow the Fortunes Doctrine which Houston General pleaded and argued, Reinsurers would be bound by Houston General's claims handling irrespective of Defendants' conduct. *See, e.g.* App. at 16-17 (Item 3 Memorandum Order p. *3, "To the extent Nadolski's testimony indicates concealment on the part of Warrantech, that alleged impropriety cannot, without any proof of collusion between Warrantech and Houston General, be attributed to Houston General.")

the first action."). The Fifth Circuit has noted that in considering whether an arbitration award will have any preclusive effect at all careful attention must be paid to the specific findings, if any, the arbitration panel actually made. *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991) (opinion by Reavley, J.) (actual "arbitral findings" may be given preclusive effect, so long as "the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written memorandum"). The summary judgment evidence negates all of these essential elements for collateral estoppel in this case, and Defendants can adduce no evidence to raise a genuine issue of fact on any element.

The summary judgment evidence shows that the Reinsurance Award contains **absolutely no findings whatsoever** relative to any of the Defendants or their misconduct;  and contains **absolutely no discussion whatsoever as to the decisional basis or bases for the Award**.  App. at 7-8 (Item 1).

Likewise, the federal district court's opinion confirming the Reinsurance Award contains no findings, much less an "adjudication" concerning any of the Defendants. App. at 14-17 (Item 3).

But this is hardly a surprise because Defendants were not parties to the Reinsurance Arbitration.[4]   And, ultimately, disproving Defendants' misconduct was **not** an element of Houston General's burden of proof to prevail.

The very precise, hand-to-glove fit of the issues that preclusion doctrine requires simply does not exist in this case. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69,

---

[4]     Defendants could not have been forced to participate in the Reinsurance Arbitration proceedings as they were not even parties to the underlying reinsurance agreements. App. at 224-261 (Items 10 and 11 Written Reinsurance Agreements Upon Which Reinsurance Arbitration was Conducted).

71 S. Ct. 408, 414 (1951) ("The difficult problem, of course, is to determine what matters were adjudicated in the antecedent suit. A general verdict of the jury or judgment of the court without special findings does not indicate which of the means charged in the indictment were found to have been used in the conspiracy."); *accord, Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519, 521 (Tex. 1998) ("We must first ascertain exactly what issues were decided in the federal action to determine whether those findings might preclude Kenneco's claims in its state court action. ... For [collateral estoppel to preclude relitigation of an issue], the issue decided in the first action must be actually litigated, essential to that lawsuit's judgment, and identical to the issue in the pending action").

Of course, Reinsurers' claims against Defendants were never subject to arbitration, were never submitted to arbitration whether in whole or in part, and no legal or factual findings whatsoever were made bearing on Defendants' liability to Reinsurers.

Reinsurers adduced evidence of Defendants' fraudulent activities, not to have them adjudicated and recover damages on them, but instead to support their thesis that Houston General had failed to properly "mind the store" as it was obligated to under the reinsurance agreements. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment d (1982)) (actual litigation occurs only "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined"); *Harkey v. Texas Employers' Ins. Ass'n*, 208 S.W.2d 919, 922 (Tex. 1948) ("Certainly issues are not *tried* merely by the hearing of the testimony thereon; submission to the jury undoubtedly is part of the process") (italics in original).

In the end, the Panel determined that Plaintiffs would have to "follow the fortunes" of Houston General — for the most part — and ordered them to pay a substantial portion of the total amount Houston General claimed under the reinsurance agreements. No findings of fact or bases for the award are set out anywhere within the four corners of the Panel's written award.[5] Defendants simply have no evidence to carry their burden to prove that Plaintiffs' claims or requisite elements of those claims were both: (1) fully and fairly litigated; and (2) essential to the award and confirming judgment. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

In fact, the summary judgment evidence negates each of the required elements for all their preclusion defenses. At most, the only conclusion to be drawn from the Final Award is that the majority of the Panel believed that Houston General had carried its burden to show entitlement to the lion's share of the sums it claimed against Reinsurers under their reinsurance agreements and that Reinsurers failed to carry their burden to show bad faith by in Houston General paying claims to Warrantech.

---

[5]     In its briefing to confirm the Panel's award, Houston General noted several alternate bases it presented to the Panel that could support the award. Among others, Houston General advanced its thesis that Reinsurers had "assumed the risk" of Warrantech's misconduct; Houston General asserted, "[b]ased solely on the evidence that the Reinsurers (not Houston General) had assumed the risk of Warrantech's (mis)performance, the Panel could have entered the Final Award." App. at 349, 361 (Item 14 Houston General's Reply Brief p. 10). As its favorite ground for the award, Houston General pointed out that the Panel "could reasonably have concluded that the Follow the Fortunes doctrine supported the Final Award despite the questions raised about Warrantech's claims handling." App. at 360 (*Id.* p. 9).

**E. Warrantech Corporation's Counterclaims Are Completely Spurious And Should Be Rejected:**

1.    **Background:**   As discussed *supra*, Warrantech Corporation had contracts of insurance with Houston General related to the extended warranties it administered.  App. at 263, 264 (Item 12 - Original Counterclaim at p. 2 ¶ 3).   Importantly, Warrantech Corporation has squarely admitted that it "did not have any contractual relationship with Reinsurers."  *Id.*; *see also* App. at 273-74 (Item 13 - Houston General Insurance Policies).   As discussed *supra*, to spread the risk associated with Warrantech Corporation, Houston General entered into the Reinsurance Agreements with Reinsurers.  App. at 264 (Item 12 - Original Counterclaim p. 2 ¶3).   No insurance or reinsurance agreements or any other contracts were ever entered into between Reinsurers and Defendants.  *Id.*

2.    **Warrantech Corporation's Counterclaims:**   On August 8, 2003, Warrantech filed its Original Counterclaim (the "Counterclaim") in which it attempted to allege causes of action against Reinsurers for fraud, violations of Article 21.21 of the Texas Insurance Code (the "Code"), and breach of the duty of good faith and fair dealing.  App. 271, 474 (Item 12 - Original Counterclaim at p. 9 and Item No. 18—State Court Transaction History at p. 4).

3.    **Why The Counterclaims Should Be Rejected:**   The claims asserted by Warrantech in the Counterclaim are baseless and unfounded.  Under well established case law and the Texas Insurance Code itself, Warrantech cannot — as a matter of law — bring a direct action against Reinsurers (Parties with whom Warrantech Corporation admits it never had any contract or relationship.).   Further, there is no evidence to establish any of the elements of Warrantech's causes of action.   Warrantech Corporation's pleadings establish that it did **not**

suffer any legally-cognizable damages as a result of Reinsurers' alleged conduct. Moreover, all of Warrantech Corporation's non-fraud claims are barred by the applicable statutes of limitation.

**4.     The Law Is Clear That Because Warrantech Corporation Has Never Been In Privity With Reinsurers It Cannot Bring Any Direct Claims Against Them.  Texas Case And Statutory Law Clearly Forbids Such Claims:**  Under black-letter reinsurance law, it is well established that a policyholder may **not** bring any direct claims against a reinsuring company. *State & County Mutual Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 697 (Tex 2001).  The Texas Supreme Court has made it crystal clear that, "[a]bsent an agreement creating direct liability in the reinsurer, all claims under the policy must be asserted against the original insurance company."  *Id.*  Further, the Texas Insurance Code specifically provides that an original insured does **not** have any rights against a reinsurer absent a contract or agreement.  *See* TEX. INS. CODE ART. 5.75-1(g) ("A person does not have any rights against a reinsurer that are not specifically set forth in the contract of reinsurance or in specific agreement between the reinsurer and the person.").

As discussed *supra*, Warrantech Corporation was not a party to the Reinsurance treaties between Houston General and Reinsurers. App. at 264 (Item 12 - Original Counterclaim p. 2 ¶ 3);  App. at 224-261 (Items 10 and 11 Treaties).  Likewise, there is no evidence of any agreement between Warrantech Corporation and Reinsurers, or any other party, that would give Warrantech Corporation a legal predicate and standing to assert any claims against Reinsurers. Warrantech Corporation specifically admits that, "Warrantech did not have any contractual relationship with Reinsurers," states it "owed no duty to Reinsurers" and emphasizes that it "denies there is any relationship between Reinsurers and Warrantech . . . ." App. at 264 (Item 12 - Original Counterclaim p. 2 ¶ 3).  In light of Warrantech Corporation's pleadings, its lack of

evidence and the evidence negating its claims, Reinsurers are entitled to summary judgment as a matter of law on all of Warrantech's claims against Reinsurers.

> **5.    Warrantech Corporation Simply Has No Legal Basis Or Evidence To Recover For "Fraud" And, As With All Its Other Claims, Warrantech Corporation Essentially Pleads Itself Out Of Court:**    Even assuming, *arguendo*, that Warrantech Corporation could bring a direct action against Reinsurers, it would still be unable to survive summary judgment on its fraud claims.  Under Texas law, in order to establish a valid claim for fraud, Warrantech must show that (i) Reinsurers made a representation to them; (ii) the representation was material and false; (iii) when the Reinsurers made the representation they knew that the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth; (iv) the Reinsurers made the representation with the intent that Warrantech act on it; (v) Warrantech reasonably relied on the representation; and (vi) the representation caused injury to Warrantech. *See Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  But there is a huge disconnect between Warrantech Corporation's allegations, the evidence and the requisite elements.

The central basis for Warrantech's fraud claim is truly bizarre;  apparently the only basis rests on (i) statements allegedly made by Reinsurers *to the Panel in the Reinsurance Arbitration*, and (ii) Reinsurers' discovery efforts during the Reinsurance Arbitration and Reinsurers' advocacy of their positions.  For example, Warrantech alleges fraud on the "grounds" that:

> "Reinsurers disparaged Warrantech and its employees to the arbitral panel, stating that Warrantech would likely 'destroy' documents before Reinsurers could issue a subpoena" [App. at 265 (Item 12 - Original Counterclaim p. 3 ¶ 6];

"Reinsurers claimed to the arbitral panel that Warrantech had a duty to preserve the WISE computer system" [*id.*];

"[I]n order to try to avoid paying rightful claims by Houston General under the policies of reinsurance, Reinsurers wrongly claimed that Warrantech was not entitled to re-use its computer space and had an obligation to preserve the data and software when no such duty existed" [*id.*];

"Reinsurers used fraud and deception in connection with the subpoena.  For example, Reinsurers requested that Warrantech sign an 'agreed order' and failed to notify Warrantech that the court refused to sign the proposed order" [App. at 266 (*id.* p. 4 ¶7)] and

"Reinsurers then claimed that because Warrantech did not preserve the data and software, that Reinsurers must have been right in their defense to Houston General's claim for insurance recovery. . . ."  [*id.*]

Warrantech Corporation's fraud claim has so many holes that it looks like Swiss cheese, but without the cheese.  For instance, none of the allegations made by Warrantech Corporation assert that any misrepresentations were: (1) made by Reinsurers to Warrantech in an effort to induce any action on their part, or (2) that Warrantech Corporation in any way relied on the representations of Reinsurers allegedly made to the Panel in the Reinsurance Arbitration.  Even if one assumes that any of these latter type of alleged statements were made, they would have been made by Reinsurers' counsel to the Panel during litigation, and not to Warrantech Corporation.  Even without considering the privileged nature of statements made in litigation,

Warrantech Corporation can adduce no evidence to raise any genuine issue of material fact on its fraud claim including, but not limited, to damages.[6]

**6.     Warrantech Corporation Has No Basis Or Evidence To Assert An Article 21.21 Claim Against Reinsurers With Whom It Has No Relationship Whatsoever:**  Even if Warrantech could assert a claim directly against Reinsurers — which, as discussed *supra*, is statutorily prohibited under TEX. INS. CODE ART. 5.75-1(g) — Warrantech's claims under Article 21.21 should be disposed of by summary judgment.  Warrantech claims that Reinsurers violated Article 21.21 of the Texas Insurance Code (the "Code") by "engaging in unfair and deceptive acts and practices in the business of insurance, including, but not limited to, …fail[ing] to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim to which liability has become clear. . .." App. at 268 (Item 12 - Original Counterclaim p. 6 ¶10).  As "damages," Warrantech claims that it is entitled to $46,000,000 (trebled to $138,000,000) which

---

[6] Warrantech Corporation's pleadings make it patent that it has no legally-cognizable damages in this case.  It claims that "[in reliance] on Reinsurers' statements and conduct, Warrantech opened its offices to Reinsurers, met with their counsel and computer experts, spoke freely and candidly with Reinsurers' counsel, and did not treat the encounter as adversarial." App. at 267 (Item 12 Original Counterclaim p. 5 ¶8).  The only specific damages alleged by Warrantech that could conceivably relate to its fraud claim are "costs in responding to the subpoena from Reinsurers in the arbitration proceeding, including its attorneys' fees for representation before the arbitral panel."  App. at 268 (*Id.* p. 6 ¶12).  However, such alleged "damages" are not viable. Warrantech, like any other party receiving a subpoena, was legally obligated to respond.  Instead of providing all of the information requested in the subpoena, Warrantech chose to challenge the subpoena before the Panel.  *Id.*  Therefore, regardless of what statements may have been made by the Reinsurers to anyone, Warrantech Corporation would have incurred these expenses.

is the amount that Houston General originally sought in the concluded Reinsurance Arbitration. App. at 269 (*Id.* p. 7 ¶ 13).[7]

Warrantech alleges that (1) "Reinsurers first refused to pay under their contract with Houston General for claims by Warrantech for CompUSA extended warranties" and (2) "Reinsurers have also refused to pay claims made by Houston General for CompUSA warranties administered by CompUSA as opposed to Warrantech." App. at 264 (*Id.* p. 2 ¶¶4-5). But any claims for such alleged conduct clearly would be in favor of Houston General, with whom Reinsurers had a contractual relationship, not Warrantech. ***Because Reinsurers never had a contractual relationship with Warrantech, Reinsurers never had any obligation to pay Warrantech Corporation any amount of money for anything; Reinsurers' only obligation was to Houston General under the Treaties.*** In any case, Warrantech Corporation can adduce no evidence on each of the requisite elements necessary to assert a viable Article 21.21 claim. Its pleadings do not even contain allegations that would support recovery under any provision of Article 21.21. Thus, summary judgment is appropriate.

**7.     Warrantech Corporation's "Bad Faith" Claims Are Facially Unsustainable — Because There Is No Insured/Insurer Relationship Between It And Reinsurers, The Insurance Duty Of Good Faith Simply Cannot Exist:** In its Counterclaim, Warrantech Corporation dedicates just one sentence to its "bad faith" claim and alleges that "Reinsurers'

---

[7] Of course, this damage theory merely replicates the precise dollar amount Houston General originally sought, on its own behalf, in the Reinsurance Arbitration. Tellingly, Warrantech Corporation cites no authority that would support this type of piggy-backing on another party's claims, reinsurance agreements and requested damages in a separate litigation. And Warrantech Corporation nowhere concerns itself with the fact that the Reinsurance Arbitration Panel did **not** award Houston General the full amount it claimed, or with the fact that the Award has already been paid. This damage "theory" more than borders on the frivolous.

conduct violated their duties of good faith and fair dealing." App. 268 (Item 12 - Original Counterclaim at p. 6 ¶11.).

However, as a matter of law, Reinsurers can owe no duty of good faith and fair dealing in the absence of insurance contract with Warrantech Corporation. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 698 (Tex. 1998). Such a duty also is non-delegable. *Natividad,* 875 S.W.2d at 698. In the present case, Warrantech Corporation can adduce no evidence to establish the predicate relationship necessary for a bad faith claim, nor can it adduce evidence to show a breach of such a duty. As discussed *supra*, it has also admitted that, "Warrantech did not have any contractual relationship with Reinsurers" and stated that it "denies there is any relationship between Reinsurers and Warrantech . . . . " App. at 264 (Item 12 - Original Counterclaim p. 2 ¶3). Thus, summary judgment is appropriate on Warrantech Corporation's claim against Reinsurers for alleged breach of the duty of good faith and fair dealing.

**8.    The Two-Year Statute Of Limitations Bars The Insurance Code and Bad Faith Counterclaims:** Warrantech Corporation's claims under Article 21.21 and for alleged breach of duties of good faith and fair dealing are subject to a two-year statute of limitations; and such causes of action accrue at the time of denial of coverage. *See* TEX. INS. CODE art. 21.21, §16(d); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 827 (Tex. 1990); *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 100 (Tex. 1994). In this case, Warrantech Corporation bases its rickety Insurance Code and bad faith claims on the general allegations that Reinsurers (before the Reinsurance Arbitration was concluded) had refused to pay Houston General for Warrantech Corporation claims, necessitating Houston General's institution of arbitration, discovery and resulting in an award for Houston General. App. at 264-66, 268 (Item 12 - Original Counterclaim ¶ 4, 5, 6, 10).

In August 1999, Warrantech Corporation was fired by CompUSA and ceased submitting claims for payment as of that date. App. at 394, 400 (Item No. 15 at 70:13-18); App. at 402, 407 Item No. 16 at 121:1-4). Therefore, any claims based upon Reinsurers and/or Houston General's alleged failure to pay claims submitted by Warrantech Corporation would have had to have been asserted by August 2001, at the latest. Because the Counterclaim was not filed until August 8, 2003, all these claims are barred by the applicable two-year statute of limitations. App. at 271, 474 (Item 12 at p. 9 and Item 18 at p. 4 showing filing and service date).

Relative to the claims for violations of Article 21.21 of the Code and for alleged breach of the duties of good faith and fair dealing based on Reinsurers' actions in connection with their efforts to obtain documents from Warrantech pursuant to the subpoena, such claims are based entirely on conduct that allegedly occurred during January 2001 (when the subpoena was issued) through March 2001 (when documents responsive to the subpoena were required to be produced in the Reinsurance Arbitration). App. at 433-34, 449-56 (Item No. 17). Because Warrantech Corporation failed to assert such claims until August 2003, all such claims also are barred by the applicable two-year statute of limitations.

9. **Warrantech Corporation's Complaints About The Conduct Of Discovery And The Reinsurance Arbitration Are Facially Barred — Parties And Their Counsel Are Afforded Broad Discretion In Advocating Claims And Defenses:** Under Texas law, attorneys generally cannot be held liable for litigation conduct. *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.–Fort Worth 1997, writ denied).

"Texas law has long authorized attorneys to 'practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for

damages.'" *Id.* at 287 (citing *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.–Dallas 1910, writ ref'd); *IBP, Inc. v. Klumpe,* 101 S.W.3d 461, 470 (Tex. App.–Amarillo 2001, pet. denied) (discussing rule prohibiting a party from recovering against another attorney for litigation conduct); *Chapman Children's Trust v. Porter & Hedges*, 32 S.W.3d 429, 441 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) (stating that an attorney's conduct is not actionable even if it is frivolous or without merit as long as the conduct was done in discharging the attorney's duties in representing his client). Should a party have complaints about another party's litigation conduct, the complaining party has the option to seek sanctions from the court where the action is pending. *See Chapman Children's Trust*, 32 S.W.3d at 441.

In portions of the Counterclaim, Warrantech Corporation complains about Reinsurers' counsel's conduct relating to the subpoena and the subsequent discussions between Reinsurers' and Warrantech Corporation's counsel regarding the documents that were responsive thereto. As a matter of law, such alleged conduct does **not** provide a basis for affirmative relief in this action. As a result, to the extent that Warrantech Corporation bases any of its causes of action on this alleged conduct, such causes of action are facially barred, unsustainable and should be disposed of by summary judgment.

### III.  CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Reinsurers request that the Court grant their Motion for Partial Summary Judgment on Defendants' Affirmative Defenses and remand this case to the Texas state court from which it was removed. In the alternative, Plaintiffs request that the Court grant their Motion for Partial Summary Judgment on Defendants' Affirmative Defenses and, without prejudice and expressly subject to their rights to further challenge subject matter jurisdiction whether in this Court or on appeal, grant their

Motion for Partial Summary Judgment on Defendant Warrantech Corporation's Counterclaims. Plaintiffs also pray for such other and further relief to which they may be entitled whether at law or equity.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: _____
    Walter A. Herring
    State Bar No. 09535300
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Attorney-in-Charge for Plaintiffs Certain
Underwriters at Lloyd's, London and Other
Reinsurers Subscribing to Reinsurance
Agreements F96/2992/00 and F97/2992/00

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.
Michael C. Steindorf
State Bar No. 19134800
Oscar Rey Rodriguez
State Bar No. 00791557
Jeff Wolff
State Bar No. 24003194
Scott P. Drake
State Bar No. 24026812
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

JOSE, HENRY, BRANTLEY & KELTNER, L.L.P.
David E. Keltner
State Bar No. 11249500
Scotty MacLean
State Bar No. 00787942
675 N. Henderson
Fort Worth, Texas  76107
Telephone:  (817) 877-3303
Facsimile:  (817) 338-9109

### Certificate of Service

The undersigned attorney, as one of the attorneys of record for the above-named Plaintiffs, certifies that true and correct copies of Reinsurers' Brief in Support of Motion for Partial Summary Judgment on Defendants' Putative Affirmative Defenses and Warrantech Corporation's Putative "Counterclaims" has been forwarded to all counsel of record listed by the method of service indicated, on this the _____ day of June, 2004.

Patricia Casey  *(Via Certified Mail/Return Receipt Requested)*
Haynes and Boone, L.L.P.
1000 Louisiana St., Suite 4300
Houston, Texas  77002

Marshall M. Searcy, Jr. *(Via Certified Mail/Return Receipt Requested)*
Kelly, Hart & Hallman, P.C.
201 Main Street, Suite 2500
Fort Worth, Texas 76102

Walter A. Herring